UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

T & T UNLIMITED, LLC, a Florida
limited liability company, and LEAH
NEES,

        Plaintiffs,

vs.                        Case No. 2:11-cv-121-FtM-29SPC

CITY OF LABELLE, FLORIDA,

        Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to Dismiss (Doc. #17) filed on July 1, 2011. After an Order (Doc. #19) requesting a response, plaintiffs filed a Reply (Doc. #20). With leave of Court (Doc. #22), defendant filed a Response to Plaintiffs' Reply (Doc. #23).

**I.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co.

v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). See also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). The former rule -- that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) -- has been retired by Twombly. James River Ins. Co., 540 F.3d at 1274. Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

## II.

Plaintiff T&T Unlimited, LLC (T&T), a Florida limited liability company, and Leah Nees (Nees)(collectively plaintiffs), filed a Second Amended Complaint (Doc. #3) (the Complaint) against the City of Labelle, Florida (the City or defendant). Plaintiffs wished to open a business to be known as "AC Enterprises" in the City of Labelle and needed occupational licenses for Automotive

Repair, Welding/Fabrication, and Machine Shop.  The proposed location for the business was at 435 S. Bridge Street, and plaintiffs were advised by the City Attorney that the location was permitted for such use.  Plaintiffs obtained occupational licenses from the City, but on or about January 2009, moved the business to 329 S. Bridge Street.

Plaintiffs had a business relationship with the City for welding and fabrication jobs.  On or about May 10, 2009, the City contacted plaintiffs regarding the construction of three trailers.  After plaintiffs provided a written estimate, the City, through Mike Boyle, asked that the larger of the three trailers be completed for $1,800.00 instead of the estimated $3,600.00.  Plaintiffs responded that based on the cost of materials they could not afford to do so at that price.

On or about May 14, 2009, Douglas Bostic (Bostic), an agent of the City, began investigating plaintiffs for ordinance violations involving fabrication and manufacture of trailers.  On May 18, 2009, Bostic issued a Code Violation warning letter to plaintiffs relating to Ordinance 4-70.3.  This ordinance provides for the creation of a "business general zone" for compatible retail enterprises having common characteristics and which do "not involve more than incidental or limited assembly, fabrication or storage of commodities." (Doc. #3, ¶ 14.)  Plaintiffs' counsel responded that plaintiffs' primary business was not the manufacture of trailers

and that they were permitted limited manufacture and fabrication of materials under the Ordinance. Despite this response, Bostic continued his investigation of plaintiffs.

Plaintiffs allege that Bostic, despite knowing that there was no code violation, issue a series of code violation notices to plaintiffs: June 11, 2009 -- citation #2025; June 22, 2009 -- citations #2077 and #2078; July 8, 2009 -- citation #2079; August 6, 2009 -- citation #2082; and August 10, 2009 -- citation #2083. (Id., ¶¶ 18-23.)

Citation Numbers 2077, 2078, and 2079 were set for hearing on August 24, 2009, but at the hearing the City's attorney dismissed the citations and stated he would seek redress through a new procedure in front of a hearing officer. Plaintiffs, through counsel, objected and sought a rehearing and dismissal with prejudice. (Id., ¶¶ 25-27.) The motion was set for a hearing, but was ultimately denied for lack of jurisdiction. (Id., ¶ 32.)

Bostic then issued a second series of code violation notices to plaintiffs: October 6, 2009 -- citations #2088 and #2089; October 14, 2009 -- citations #2090, #2091, and #2092; October 15, 2009 -- citations #2093 and #2094; and October 17, 2009 -- citation #2095. (Id., ¶¶ 33-40.) To mitigate their damages, plaintiffs relocated their business to a location outside the city limits, at 3113 Dellwood Terrace, in or about November 2009. (Id., ¶ 42.)

On April 1, 2010, after plaintiffs provided an updated notice of intent to sue, the City initiated action on citation numbers 2025, 2077, 2078, and 2088 through 2095 by mailing a notice of hearing before a Special Magistrate for each of the eleven citations. Some of the citations were never served on Nees, or her husband (Anthony Nees), and only one was served on Anthony Nees. (Id., ¶¶ 41, 43.) Plaintiffs served a motion to dismiss with prejudice, notice of expiration of speedy trial, and request to take judicial notice on April 14, 2010. (Id., ¶ 43.)[1] Bostic continued to harass and stalk customers and business associates of plaintiffs, and had direct or indirect contact or correspondence with plaintiffs' known business associates. (Id., ¶¶ 44-45.)

Plaintiffs have filed a thirty-five (35) count Second Amended Complaint (Doc. #3). Counts I through XIV are brought pursuant to 42 U.S.C. § 1983, and each count alleges that the issuance, prosecution, and refusal to set a hearing for a specific citation violated plaintiffs' due process rights. Count XV through Count XXVIII are brought pursuant to 42 U.S.C. § 1985, and each count alleges that two or more agents of the City conspired to violate plaintiffs' rights to due process under § 1985 by issuing a specific citation and refusing to set a hearing. Counts XXIX through XXXV are state law claims which each allege the City

---

[1]In their motion papers, plaintiffs represent that the matters are still pending before the Special Magistrate.

intentionally interfered with specifically identified third parties with whom plaintiffs had a business relationship by having direct contact with an agent of the third party.

**III.**

Defendant argues that the Section 1983 counts fail to state a claim for either a substantive or procedural due process violation; the Section 1985 claims fail because no conspiracy or constitutional violation is alleged and because of the intercorporate conspiracy doctrine; and that the City has immunity from the state tort claims.

**A. Due Process Claims - Section 1983**

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To establish a claim under § 1983, plaintiffs must allege and ultimately prove that (1) defendant deprived him of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). Plaintiffs also must allege and prove an affirmative causal connection between defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc).

The Fourteenth Amendment protects substantive and procedural due process rights. AFL-CIO v. City of Miami, Fla., 637 F.3d 1178,

1185 (11th Cir. 2011). Substantive due process protects only "fundamental" rights under the United States Constitution, not substantive rights created by state law. McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994); Bailey v. City of Pinellas Park, 147 F. App'x 932, 934 (11th Cir. 2005). Therefore, tort law "remains largely outside the scope of substantive due process jurisprudence," Skinner v. City of Miami, Fla., 62 F.3d 344, 347 (11th Cir. 1995)(collecting cases), and property rights are excluded because they are not created by the Constitution, Greenbriar Vill., L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003).

"Procedural due process requires notice and an opportunity to be heard before any governmental deprivation of a property interest." Zipperer v. City of Fort Myers, 41 F.3d 619, 623 (11th Cir. 1995). To establish a procedural due process claim plaintiffs must satisfy a three-part test by showing (1) a deprivation of a constitutionally-protected property or liberty interest, (2) by state action, (3) through a constitutionally inadequate process. Foxy Lady, Inc. v. City of Atlanta, Ga., 347 F.3d 1232, 1236 (11th Cir. 2003). A procedural due process violation is "not complete unless and until the State fails to provide due process. [ ] In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation

does a constitutional violation actionable under section 1983 arise." McKinney, 20 F.3d at 1557 (quotation marks and internal citation omitted). "Property interests stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts. [ ] Whether these sources create a property interest must be decided by reference to state law." Arrington v. Helms, 438 F.3d 1336, 1348 (11th Cir. 2006) (internal citation omitted).

Counts I through XIV do not identify a fundamental constitutional right, but allege that the issuance and prosecution of various citations, with the threat of civil fines and criminal incarceration, violated plaintiffs' due process rights causing plaintiffs to suffer monetary loss and the refusal of an opportunity to be heard. (Doc. #3, ¶¶ 50, 54, 58, 62, 66, 70, 74, 78, 82, 86, 90, 94, 98, 102.) Plaintiffs argue that "rights of liberty and property rights" were violated. (Doc. #20, p. 3.) The Court assumes that plaintiffs are alleging that the threat of civil fines and incarceration are the property and liberty interests at issue, although plaintiffs allegations only vaguely allude to these interests. Plaintiffs further allege that the City "refused to set the matter for a hearing so the Plaintiffs had an opportunity to be heard." (Doc. #3, ¶¶ 50, 54, 58, 62, 66, 70, 74, 78, 82, 86, 90, 94, 98, 102.)

Citations 2077, 2078, and 2079 were set for a hearing, although eventually the City voluntarily dismissed the citations. The Second Amended Complaint further alleges that Citations 2025, 2077, 2078, and 2088 through 2095 were set before a Special Magistrate and plaintiffs filed an appearance, but the Citations remained unresolved. (Doc. #3, ¶¶ 41, 43.) In plaintiffs' response to the motion to dismiss, they state that a Petition for Writ of Mandamus was filed to compel a ruling, which remains pending. (Doc. #20, ¶ 6.) While the procedures may not be to plaintiffs' liking, even the Second Amended Complaint concedes that procedures do exist.

The Second Amended Complaint does not allege that a deprivation occurred, but rather that a risk exists and that a deprivation will or may occur. This is insufficient to support a claim that a property or liberty interest was deprived without due process. Arrington v. Helms, 438 F.3d at 1348 n.12. Despite the allegations that the City has "refused to set the matter for a hearing", it is clear that the City has not yet deprived plaintiffs of their rights to due process, or been provided the ability to cure or remedy a violation based on the "threat" of action alleged. The City argues that procedures exist under Florida Statute 162.01, *et seq.*, the Local Government Code Enforcement Boards Act, and the City of Labelle Municipal Code, Chapter 2, Article 1, Section 2-5.

There are no allegations that plaintiffs used these procedures and was actually deprived of due process.

The motion to dismiss will be granted for failure to state substantive and/or procedural due process claims in Counts I through XIV. Because it may be possible to allege a due process violation with more factually specific allegations, this dismissal will be without prejudice.

**B. Conspiracy Claims - Section 1985**

Section 1985(1) prohibits conspiracies to prevent, by force, intimidation, or threat, any person from accepting or holding office under the United States, or to induce or injure the person from discharging official duties. Section 1985(2) prohibits conspiracies to intimidate parties or witnesses to federal lawsuits. Farese v. Scherer, 342 F.3d 1223, 1229 (11th Cir. 2003). Section 1985(3), the Ku Klux Klan Act of 1871, provides redress for a conspiracy by two or more persons to deprive a person of "the equal protection of the laws, or of equal privileges and immunities under the laws," and requires a showing of racial or otherwise class-based discrimination. Childree v. UAP/GA AG Chem, Inc., 92 F.3d 1140, 1147 (11th Cir. 1996). See also 42 U.S.C. § 1985. The Court will assume that plaintiffs are attempting to state a cause of action under Section 1985(3), since the other provisions clearly do not apply here.

To state a cause of action, plaintiffs must prove "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983). "Concerns that § 1985 might be interpreted into a general federal tort law led to the requirement that the conspiracy be motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Park v. City of Atlanta, 120 F.3d 1157, 1161 (11th Cir. 1997)(quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). Nothing in the Second Amended Complaint suggests a racial or class-based motivation.

Additionally, the "intracorporate conspiracy" doctrine holds that a corporation cannot conspire with its employees, and its employees cannot conspire among themselves. Grider v. City of Auburn, Ala., 618 F.3d 1240, 1261 (11th Cir. 2010). This doctrine applies to a City and its employees, and bars the Section 1985 claim as pled. Id. The Court need not consider whether exceptions apply since plaintiffs have failed to plead facts which may establish such exceptions in the Second Amended Complaint. The Court will dismiss these counts without prejudice.

**C. Intentional Interference with Advantageous Business**

The tort of interference with a business relationship requires plaintiffs to show "(1) the existence of an advantageous business relationship under which the plaintiff has legal rights, (2) an intentional and unjustified interference with that relationship by the defendant, and (3) damage to the plaintiff." Executive 100, Inc. v. Martin County, 922 F.2d 1536, 1542 (11th Cir. 1991)(citation omitted). Defendant's claim to immunity under Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So. 2d 912 (Fla. 1985), is misplaced because that case addresses a *negligence* action against a city, not an intentional tort. A municipality can be held liable for intentional torts of employees committed within the scope of the employee's employment. City of Miami v. Simpson, 172 So. 2d 435, 437 (Fla. 1965); Richardson v. City of Pompano Beach, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987). The current status of municipal tort liability is:

> 1) as to those municipal activities which fall in the category of proprietary functions a municipality has the same tort liability as a private corporation;
>
> 2) as to those activities which fall in the category of governmental functions . . . a municipality is liable in tort, under the doctrine of respondeat superior, only when such tort is committed against one with whom the agent or employee is in privity, or with whom he is dealing or is otherwise in contact in a direct transaction or confrontation. [ ];
>
> 3) as to those activities which fall in the category of judicial, quasi judicial, legislative, and quasi legislative functions, a municipality remains immune. [ ].

Clayton v. City of Cape Canaveral, 354 So. 2d 147, 149-50 (Fla. 4th DCA 1978)(internal quotation marks and citations omitted). The Second Amended Complaint plausibly alleges that Bostic was acting within the scope of his employment. The motion to dismiss will be denied as to Counts XXIX through XXXV.[2]

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion to Dismiss (Doc. #17) is **GRANTED** in part and **DENIED** in part. The motion to dismiss is granted as Counts I through XIV for failure to state a claim; granted as to Counts XV through Count XXVIII for failure to state a claim; and denied as to Counts XXIX through XXXV.

2. Plaintiffs may file a Third Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order. If plaintiffs do not file a Third Amended Complaint, the Court will consider remanding the case to state court pursuant to 28 U.S.C. § 1367(c)(3).

3. The Joint Motion to Stay Case Management and Scheduling Order Deadlines (Doc. #24) is **DENIED** as moot and without prejudice.

**DONE AND ORDERED** at Fort Myers, Florida, this ___16th___ day of November, 2011.

JOHN E. STEELE
United States District Judge

---

[2]The Court doubts that there are sufficient factual allegations of interference, since all that is alleged are direct contacts. This pleading deficiency, however, has not been asserted by the City.